# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

HAYDEN L.,[1]

                    Plaintiff,

v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security Administration,

                    Defendant.

Case No. 3:23-cv-00123-HRH

## DECISION AND ORDER

On or about April 11, 2017, Hayden L. ("Plaintiff") protectively filed an application

under Title XVI of the Social Security Act,[3] with an alleged onset date of January 1, 2016.[4]

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title XVI only. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[4] Administrative Record ("A.R.") A.R. 277, 704. The application summary, not the application itself, appears in the Court's record and is dated April 19, 2017. A.R. 277. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, April 11, 2017, is considered Plaintiff's application filing date.

Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[5] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for the immediate payment of benefits, or in the alternative, for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[6] The Commissioner filed the Administrative Record as his Answer and a Response Brief.[7] Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9] For the reasons discussed below, Plaintiff's request for relief at Docket 8 is GRANTED.

## I.      STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10] "Substantial evidence" has been defined by the United States Supreme Court as "such

_____

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 8 (Mtn. to Reverse Comm'r Decision and Remand), Docket 9 (Plaintiff's Br.).

[7] Docket 7 (Notice of Lodging Admin. Record); Docket 11 (Commissioner's Br.). As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record." *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] Docket 12 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[15] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the

---

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[15] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[17] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).

claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18] However, this duty exists "even when the claimant is represented by counsel."[19]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in

---

[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).

[19] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28]  *The ALJ determined that Plaintiff had not engaged in SGA since April 11, 2017, the application date.*[29]

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.

[27] *Tackett*, 180 F.3d at 1101 (emphasis in original).

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 645.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 5 of 28

experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), sleep apnea, obesity, and somatic symptom disorder.  The ALJ determined that Plaintiff's gastritis/esophagitis, compression fracture of the thoracic spine, right shoulder pain, mild cognitive impairment, and attention deficit disorder were non-severe impairments.*[31]

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[32]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

Residual Functional Capacity.  Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[34]  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 645–46.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 647.

[34] 20 C.F.R. §§ 404.1545(a), 416.945(a).

to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[35] *The ALJ determined that Plaintiff had the residual functional capacity to perform medium work with the following limitations: occasionally climbing stairs and ramps; never climbing ladders, ropes, and scaffolds; frequently balancing, stooping, kneeling, crouching, and crawling; avoiding all exposure to respiratory irritants and poorly ventilated areas; and avoiding concentrated exposure to humidity. The ALJ also limited Plaintiff to routine tasks that can be taught by demonstration.[36]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[37] Otherwise, the evaluation process moves to the fifth and final step.[38] *The ALJ determined that Plaintiff was able to perform his past relevant work as a grocery store bagger and care provider.[39]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the

---

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[36] A.R. 648.

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[39] A.R. 655.

RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.[40] *In addition to finding that Plaintiff could perform his past relevant work at step four, the ALJ found that Plaintiff would have been able to perform occupations such as packager (DOT # 920.587-018, SVP 2) and store laborer (DOT #922.687-058, SVP 2).[41]*

The ALJ concluded that Plaintiff was not disabled at any time from April 11, 2017, the application date, through February 7, 2023, the date of the ALJ's decision.[42]

## III.  PROCEDURAL BACKGROUND

Plaintiff was 54 years old on the application date and considered an individual closely approaching advanced age.  He subsequently changed age categories to advanced age and then to closely approaching retirement age.[43]  His past relevant work included work as a care provider, dishwasher, dog and cat food cook, and grocery store bagger.[44]

Plaintiff alleged disability due to COPD and sleep apnea.[45]  His claims were denied initially on November 17, 2017.[46]  On March 4, 2019, he appeared with representation before ALJ Paul Hebda.  The ALJ ended the hearing because of technical issues with the

---

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 656.

[42] A.R. 657.

[43] A.R. 655.  *See* 20 C.F.R. §§ 404.1563, 416.963.

[44] A.R. 655.

[45] A.R. 89.

[46] A.R. 102.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 8 of 28

recording equipment.[47]  The hearing was continued to August 21, 2019.  Plaintiff appeared and testified with representation before ALJ Cecilia LaCara.[48]  On September 23, 2019, the ALJ issued an unfavorable ruling.[49]  The Appeals Council denied Plaintiff's request for review on June 10, 2020.[50]

Plaintiff appealed to this Court and on April 1, 2021, the Court reversed the Commissioner's final decision and remanded for further proceedings.[51]  The Appeals Council remanded the case for further proceedings consistent with the Court's order. Specifically, the Council ordered the ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.[52]

On December 14, 2022, Plaintiff appeared and testified with representation before ALJ Cecilia LaCara at a hearing after remand.[53]  The hearing was held by telephone conference call.[54]  On February 7, 2023, the ALJ issued a second unfavorable ruling.[55]

---

[47] A.R. 37–42.

[48] A.R. 58–71.

[49] A.R. 15–29.

[50] A.R. 724.

[51] A.R. 735–62.

[52] A.R. 765.

[53] A.R. 671–93.

[54] A.R. 668–69.

[55] A.R. 643–57.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 9 of 28

After the ALJ's decision became administratively final, Plaintiff timely appealed to this Court.[56]

## IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges that the ALJ's rejection of Plaintiff's treating source opinions and the testifying medical expert's opinions "in favor of only a single state agency opinion offered based on a very limited review of the medical evidence of record," was harmful error.  Plaintiff also alleges that the ALJ failed to include Plaintiff's "credible" mental limitations in the RFC or explain why she was omitting them.[57]  The Commissioner disagrees and urges the Court to affirm the ALJ's decision.[58]

### A.    Medical Opinion Evidence

Plaintiff alleges that the ALJ did not adequately evaluate the persuasiveness of the medical opinions of record.  Specifically, he asserts that the ALJ's analysis of the medical opinions of record "failed to acknowledge the consistency of the opinions of Dr. Kidder, Dr. Schuerman, and Dr. Cornelius; ignored objective evidence supporting these three consistent medical source opinions; and relied upon an outdated state agency opinion."[59] He alleges that the ALJ also failed to consider the consistency of the opinion of Dr.

---

[56] A.R. 641.  Plaintiff filed his complaint on June 6, 2023. *See* Docket 1.

[57] Docket 9 at 3–15.

[58] Docket 11 at 2–10.

[59] Docket 9 at 8.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 10 of 28

Gerboth.[60]  Because Plaintiff protectively filed his applications on or about April 11, 2017,

the revised regulations governing the evaluation of medical evidence are applicable here.

    1.    *Legal Standard*

Under the revised regulations in effect March 27, 2017, the definition of what

constitutes a medical opinion has been narrowed, focusing on what the claimant can do

despite his impairments and what work-related limitations are present.[61]  The new

regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)    Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)    Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[62]

The revised regulations further provide that the ALJ no longer gives any particular

weight to a medical opinion based on its source, thereby eliminating the treating source

---

[60] Docket 9 at 8–9.

[61] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).

[62] 20 C.F.R. § 404.1513(a)(2).

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 11 of 28

rule.[63]  Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[64]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[65]  Supportability and consistency are explained as follows in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[66]

Generally, these are the only two factors the ALJ is required to address in her decision.[67]

However, when two or more medical opinions or prior administrative medical findings

---

[63] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).

[64] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[65] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).

[66] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[67] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 12 of 28
Case 3:23-cv-00123-HRH   Document 13   Filed 04/23/24   Page 12 of 28

"about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[68]  In the Ninth Circuit, the current regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[69]

For the reasons set forth below, the ALJ erred by discounting Dr. Kidder's functional limitations.  To the extent Plaintiff's treating providers' opinions were consistent with the walking/standing and lifting limitations provided by Dr. Kidder, the ALJ also erred by discounting that portion of the providers' opinions.

2.    *Medical Opinion of Testifying Expert Wayne Kidder, M.D.*

Wayne Kidder, M.D., testified at Plaintiff's hearing on August 21, 2019.  He testified that he was board certified in internal medicine with subspecialties in hematology and medical oncology.  Dr. Kidder testified that Plaintiff's impairments included COPD and asthma with symptoms of shortness of breath, often triggered by certain smells and fumes, especially smoke.  He specifically reviewed the objective medical evidence, including multiple pulmonary function tests.  Dr. Kidder testified that Plaintiff's impairments also included gastritis and esophagitis, sleep apnea, and obesity.  Again, he reviewed the objective medical evidence for these impairments.   He then opined that Plaintiff's impairments did not meet or equal a listing, alone or in combination.[70]

---

[68] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[69] *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

[70] A.R. 48–51.

Dr. Kidder opined that Plaintiff could perform light work with the following exertional limitations: lifting 20 pounds occasionally and 10 pounds frequently; standing and walking for at least two hours and sitting for six hours in an eight-hour workday; unlimited pushing and pulling up to the weight limits for lifting; climbing ramps or stairs occasionally; never climbing ladders, ropes, or scaffolds; and balancing, stooping, kneeling, crouching, and crawling occasionally. Dr. Kidder opined that Plaintiff had environmental limitations of avoiding concentrated exposure to extreme cold, heat, wetness, and humidity; avoiding all exposure to fumes, odors, dust, and gases; and avoiding concentrated exposure to unprotected heights and hazardous machinery.[71]

This Court is confined to reviewing the reasons the ALJ asserts.[72] An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.[73] And, the consistency of a medical opinion with the treatment notes is a relevant factor in the ALJ's evaluation of that opinion.[74] However, an ALJ may not "cherry pick" evidence to discount a medical opinion.[75]

         a.     *Dr. Kidder's Functional Limitations are Consistent with His Testimony*

---

[71] A.R. 51–53.

[72] *Brown-Hunter,* 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotations, citations, and emphasis omitted).

[73] *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).

[74] *See Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014); *Orn v. Astrue,* 495 F.3d 625, 634 (9th Cir. 2007).

[75] *Ghanim,* 763 F.3d at 1164.

First, the ALJ discounted Dr. Kidder's opinion as inconsistent with his own testimony. Specifically, the ALJ found that Dr. Kidder's functional limitations were inconsistent with his testimony that Plaintiff's symptoms improved with smoking cessation and medication and his testimony that Plaintiff had not required recent hospitalizations for breathing problems.[76] However, Dr. Kidder does not appear to have testified that Plaintiff's respiratory symptoms improved with smoking cessation and medication. Instead, he testified that Plaintiff reported to providers that he quit smoking in June 2016.[77] He noted that in one out of the three pulmonary function tests he reviewed, Plaintiff experienced an "excellent response to [a] bronchodilator."[78]

Moreover, the specific records cited by the ALJ as inconsistent with Dr. Kidder's testimony do not conflict with his testimony that Plaintiff was capable of light work with limitations. Primarily, the cited records document Plaintiff's reports to treating providers that he ceased smoking in June 2017.[79] At these visits, Plaintiff also reported that he "does well on Pepcid," but that he struggled in public because perfumes and smells caused exacerbations of his symptoms. These records show that Plaintiff was able to

---

[76] A.R. 653.

[77] A.R. 48.

[78] A.R. 48–49.

[79] As noted by this Court in its previous decision, the record is a bit ambiguous as to when Plaintiff stopped smoking. There are references to June 2016, June 2017, July 2018, and March 2021. *See* A.R. 524, 532, 551, 563, 614, 617, 1119, 1129.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 15 of 28

speak in full sentences with no increased work to breath, but also show diffuse wheezing and limited airflow, and oxygen saturation levels between 94–98%.[80]

As Plaintiff asserts, the ALJ's provided reasons for discounting Dr. Kidder's functional limitations as inconsistent with his own testimony are essentially the same reasons the ALJ provided in her September 2019 decision.[81] As this Court found in its previous decision, Plaintiff's lack of recent hospitalizations for respiratory problems does not necessarily mean that Plaintiff was not as limited as Dr. Kidder opined.[82]

Therefore, the Court concludes that the ALJ's reason for discounting Dr. Kidder's functional limitations as inconsistent with his own testimony is not supported by substantial evidence.

       b.     *Dr. Kidder's Functional Limitations are Supported by the Record*

Second, the ALJ concluded that Dr. Kidder's opinion was not supported by the record. The ALJ cited several examples in support of her findings. The ALJ noted "records showing largely normal pulmonary evaluations" and no recent hospitalizations. The ALJ also pointed to records "repeatedly indicating that [Plaintiff] states that his symptoms are triggered by exposure to scents and fumes, which I have already accommodated for in the residual functional capacity." Further, the ALJ noted that "the records repeatedly show that [Plaintiff] is observed to be in no distress, ambulates with ease, can speak in full sentences without difficulty, does not have labored breathing, and

_____

[80] A.R. 524–26, 570–72.

[81] Docket 9 at 6–7. *Compare* A.R. 653, 711.

[82] A.R. 750.

is not observed to leave the room to vomit during appointments." Finally, the ALJ found that the records indicated that Plaintiff's symptoms were well managed with his current medication regime, and he was able to avoid exacerbations by avoiding respiratory irritants.[83]

The Court's review of the record does shows that, at most medical appointments during the time period reviewed by Dr. Kidder, Plaintiff was in no acute distress, could speak in full sentences without difficulty, did not have labored breathing, and was not observed to leave the room to vomit during appointments.[84] However, Dr. Kidder supported his workplace limitation opinion with specific references to and analysis of Plaintiff's pulmonary function tests, his treatment with inhalers and medication, the other medical source opinions of record, and Plaintiff's use of supplemental oxygen at home.[85] For a second time, the ALJ did not analyze this evidence.[86] And, the objective evidence in the record after Dr. Kidder rendered his medical opinion supports his opinion that Plaintiff should be limited to light work with restrictions.[87]

---

[83] A.R. 653.

[84] *E.g.,* A.R. 525 (able to speak in full sentences, diffuse wheezing), 528 (speaks in full sentences with clear lungs, requires three inhalers/month), 530, 533 (prolific, nearly non-stop speech with clear lungs), 553 (able to speak in full sentences with no increased work of breathing, limited airflow throughout), 576 (did not use inhaler in evaluation and did not leave due to gastrointestinal issues), 596 (no acute distress with mildly decreased breath sounds in the lower lobes bilaterally with no wheezing, rales, or rhonchi), 600 (clear lungs, breathing unlabored, very talkative), 612 (can talk in full sentences with wheezing and rhonchi present), 616, 619 (able to speak in full sentences).

[85] A.R. 48–53.

[86] A.R. 653.

[87] *E.g.,* A.R. 1104 (extent of COPD, presence of bronchiectasis on CT, and diminished respiratory effort necessitates nebulized medication, PFT from 11/17/2020 demonstrated asthma

Moreover, the ALJ did not include a discussion of Dr. Kidder's review of Plaintiff's pulmonary function testing results.[88]  And recent Ninth Circuit district courts decisions have held that "it is questionable whether a chart note of 'no acute distress' is relevant to allegations of chronic symptoms."[89]

Next, the ALJ discounted Dr. Kidder's opinion because Plaintiff's symptoms were relieved by medication and avoiding respiratory irritants.[90]  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."[91]  At the same time, symptom improvement must be evaluated in the context of the "overall

---

superimposed on moderate COPD with FEV1 of 49%), 1113 (In August 2019, Plaintiff was "using Dulera, Proventil and Combivent inhalers and continues to have early AM and late afternoon symptoms.  He continues to use supplemental oxygen as needed for intermittent shortness of breath . . .").

[88] A.R. 653.  Dr. Kidder described multiple pulmonary function tests and pointed to the exhibit page numbers for each test result.  A.R. 48–50.

[89] *See e.g., Troy A.H. v. Comm'r of Soc. Sec.,* Case No. 6:20-cv-01228-YY, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022)*; Mitchell v. Saul,* Case No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020) ("Moreover, the court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute' distress do not distract from the findings regarding Plaintiff's chronic conditions."), *report and recommendation adopted sub nom. Mitchell v. Berryhill,* 2020 WL 1017899 (D. Nev. Feb. 28, 2020); *Richard F. v. Comm'r of Soc. Sec,* Case No. C19-5220-JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony.  'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.").

[90] A.R. 653.

[91] *Wellington v. Berryhill,* 878 F.3d 867, 876 (9th Cir. 2017); *see also* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

diagnostic picture[.]"[92]  And, "there can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]"[93]

As set forth above, the ALJ did not discuss the evidence analyzed by Dr. Kidder in his testimony, including the pulmonary function tests, CT scans, and Plaintiff's use of supplemental oxygen, multiple inhalers, and nebulizers.  Consequently, the ALJ did not analyze Plaintiff's treatment with medication and avoiding irritants in the context of the overall diagnostic picture.

In sum, the ALJ's finding that Dr. Kidder's functional limitations are not supported by the medical record is not supported by substantial evidence.

*3.    Medical Opinions of Lisa Schuerman, ACNP, Christopher Cornelius, M.D., and Gregory Gerboth, M.D.*

In June 2017, Lisa Schuerman, ACNP, completed a pulmonary medical source statement.  AP Schuerman's assessment applied to the period from July 2016 through July 2017.  She opined that Plaintiff could stand and walk less than two hours, sit at least six hours, could rarely lift up to 20 pounds, needed extra breaks, and would be absent from work more than four days per month due to his impairments.[94]

On June 10, 2017, Christopher Cornelius, M.D., completed a pulmonary medical source statement.  He opined that Plaintiff could stand and walk about two hours and sit

---

[92] *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001).

[93] *Garrison,* 759 F.3d at 1017 n.23 (internal quotations and citation omitted).

[94] A.R. 458–61.

for at least six hours, could occasionally lift less than 10 pounds, would need unscheduled breaks, and would be absent more than four days per month.[95]

On March 31, 2022, Gregory Gerboth, M.D., completed a pulmonary medical source statement. Based on pulmonary function test results and one telemedicine appointment with Plaintiff, Dr. Gerboth provided functional limitations, including standing and walking less than two hours and sitting about two hours in an eight-hour workday, lifting and carrying 10 pounds occasionally and 20 pounds rarely. He also opined that Plaintiff would be off-task 20% of the workday and would be absent more than four days per month.[96]

The ALJ found that ACNP Schuerman's, Dr. Cornelius's, and Dr. Gerboth's opinions were not persuasive.[97] First, the ALJ reasoned that the opinions were inconsistent with treatment notes showing that Plaintiff's asthma exacerbations were infrequent, his vomiting and asthma symptoms responded well to treatment, he showed no unintentional weight loss, and he was observed to be in no distress, with no wheezing or difficulty breathing on examination. However, contrary to the ALJ's provided examples, treatment notes show that although Plaintiff was not hospitalized for respiratory exacerbations after 2018, he reported exacerbations to treating providers.[98] At

---

[95] A.R. 419–22.

[96] A.R. 1124–27.

[97] A.R. 653–54.

[98] *E.g.,* A.R. 529, 586, 1134, 1159.

appointments, Plaintiff reported weight loss and loss of appetite.[99]  At one appointment, he reported unintentional weight loss greater than 50 pounds.[100]

Second, the ALJ found that Plaintiff's treating providers' opinions were inconsistent with Plaintiff's "ability to travel out of state by plane to attend a concert despite his reported difficulty being around perfumes or scents and the lack of significant observations in the record to show indications of vomiting or symptoms exacerbations during appointments."[101]  While daily activities may be used to impeach a medical opinion, at the same time, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."[102]  In this case, the ALJ did not seek further explanation of the Portland trip at the hearing.[103]  Plaintiff's single flight to Portland is not substantial evidence undermining the providers' standing/walking and lifting limitations.

Regarding Dr. Gerboth's opinion, the ALJ also concluded that the opinion relied heavily on Plaintiff's subjective complaints, but that those complaints were not consistent with the records.[104]  The ALJ did not tie Dr. Gerboth's opinion to the specific subjective complaints that she was discrediting.[105]  And, the Court's review of Plaintiff's telemedicine

---

[99] *E.g.,* A.R. 1109 (reported intentional weight loss), 1113 (reported weight loss and loss of appetite), 1116 (review of systems positive for weight loss and loss of appetite).

[100] A.R. 1119 (reported significant unintentional weight loss greater than 50 pounds).

[101] A.R. 652.

[102] *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1988).

[103] A.R. 692.

[104] A.R. 653–54.

[105] *See Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir. 1988) (The ALJ failed to "set forth [her] own interpretations and explain why they, rather than the doctors', are correct.").

visit shows that Dr. Gerboth reviewed Plaintiff's electronic health records in addition to eliciting information from Plaintiff directly.[106] At the same time, Dr. Gerboth did observe on the telemedicine platform that Plaintiff walking around "in no obvious distress[,]" and "[d]id not demonstrate increased work of breathing in [his home] although he says in his home he does not have any particular problems just when he is in [an] external environment and is exposed to substances that cause [Plaintiff's symptoms] to get worse."[107]

However, the three treating providers' opinions are consistent with Dr. Kidder's testimony and the overall treatment record in terms of Plaintiff's capacity to stand/walk about two hours per day and lift between 10 to 20 pounds. Therefore, the ALJ erred by discounting ACNP Schuerman's, Dr. Cornelius's, and Dr. Gerboth's standing/walking and lifting opinions.

### 4. Medical Opinion of Shirley Fraser, M.D.

On November 16, 2017, Shirley Fraser, M.D., an agency reviewing physician, provided an RFC for Plaintiff. She opined that Plaintiff could perform medium work.[108] She limited Plaintiff to occasional climbing of ramps and stairs, frequent balancing, stooping, kneeling, crouching, and crawling and opined that Plaintiff should avoid

---

[106] A.R. 1129.

[107] A.R. 1131.

[108] Medium work has been interpreted "to require standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." *See Conway v. O'Malley,* 96 F.4th 1275, 1278 (9th Cir. Mar. 26, 2024), citing *Terry v. Saul,* 998 F.3d 1010, 1013 (9th Cir. 2021) (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)).

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 22 of 28

Case 3:23-cv-00123-HRH   Document 13   Filed 04/23/24   Page 22 of 28

concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation.  Dr. Fraser stated that her postural limitations were based on Plaintiff's COPD with "mildly abnormal FEV1."[109]

The ALJ provided greater respiratory limitations than opined by Dr. Fraser, but otherwise found Dr. Fraser's opinion persuasive.  The ALJ reasoned that the opinion was consistent with and supported by the record.[110]  Because Dr. Fraser's opinion was the only opinion the ALJ found persuasive regarding Plaintiff's exertional limitations, the physical limitations contained in the RFC are based on her opinion.  This opinion is the only opinion in the record limiting Plaintiff to the medium work standards for lifting and carrying and walking, standing, and sitting.[111]

Dr. Fraser's medical opinion that Plaintiff is capable of medium work is inconsistent with the medical opinions of Plaintiff's treating providers and the testifying medical expert.  It was rendered in 2017 and is based on a limited review of the medical record.  The ALJ's complete reliance on Dr. Fraser's opinion that Plaintiff is able to perform medium work is not supported by substantial evidence.

## B.    Mental Limitations and the Law of the Case

Plaintiff alleges that it was legal error for the ALJ "to omit Plaintiff's proven mental function limitations from the RFC finding without explanation."[112]  Specifically, he asserts

---

[109] A.R. 95–97.

[110] A.R. 652.

[111] A.R. 95–97.

[112] Docket 9 at 13, n.1.

that the ALJ should have adopted limitations in the RFC to address Plaintiff's mild social limitations; moderate limitation concentrating, persisting, and pacing; and moderate limitations adapting and managing oneself.[113]  Plaintiff also asserts that the ALJ failed to "consider whether [Plaintiff's] somatic symptom disorder was causing additional mental or physical limitations, beyond those that would be expected based on the objective evidence."[114]  The Commissioner counters that the law of the case applies to the ALJ's decision regarding Plaintiff's mental limitations.[115]

In the Ninth Circuit, both "the law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case."[116]  The law of the case doctrine "generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case."[117]  It applies both to issues decided explicitly "or by necessary implication" in a prior decision.[118]  The doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."[119]

---

[113] Docket 9 at 13–15.

[114] Docket 9 at 9–10.

[115] Docket 11 at 2–4.

[116] *Stacy v. Colvin,* 825 F.3d 563, 566 (9th Cir. 2012).

[117] *Id.*

[118] *Hall v. Cty. Of L.A.,* 697 F.3d 1059, 1067 (9th Cir. 2012).

[119] *Stacy,* 825 F.3d at 566 (citation omitted).

Here, Royal Kiehl, M.D., an agency reviewer, and Cheryl Buecher, Ph.D., a testifying expert, opined as to Plaintiff's limitations from his mental impairments. On September 22, 2017, Dr. Kiehl determined that Plaintiff's borderline intellectual functioning was a severe impairment.[120] He opined that Plaintiff was able to sustain concentration, persistence, and pace for simple, one to two step tasks; could interact appropriately with coworkers and supervisors; was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderately limited in his ability to sustain an ordinary routine without special supervision; moderately limited in his ability to make simple work-related decisions; and moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. In sum, Dr. Kiehl determined that Plaintiff was "capable of the basic mental demands of unskilled work."[121]

Dr. Buecher testified at Plaintiff's August 21, 2019 hearing. She agreed with Dr. Kiehl that Plaintiff had "a mild limitation on the ability to understand, remember or apply information, interact with others" and a "moderate limitation[ ] on the ability to concentrate, persist or maintain pace or adapt and manage oneself[.]" She testified that Plaintiff would

---

[120] A.R. 94.

[121] A.R. 97–99.

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 25 of 28

be restricted "to routine tasks" and "if reminders were needed, I would use visual reminders . . . rather than verbal reminders[.]"[122]

Regarding Plaintiff's mental impairments, this Court held previously that "[t]he ALJ's assessment of the limitations flowing from [P]laintiff's mental impairments was consistent with the restrictions opined to by Dr. Buechner and Dr. Kiehl. The ALJ was not required to include additional limitations based on her 'paragraph B' assessments."[123] This Court also held that "[t]he ALJ did not err in her treatment of Dr. Kiehl's opinion."[124]

On remand, the ALJ again reviewed and relied on Dr. Buechner's testimony from the previous hearing and Dr. Kiehl's opinion to determine the extent of Plaintiff's mental limitations in the RFC.[125] The ALJ's non-exertional limitations in the RFC, based on Plaintiff's mental impairments, are essentially the same in the decision before remand and the decision after remand.[126]

Because Plaintiff's assertions regarding the ALJ's treatment of Plaintiff's mental limitations were already considered and rejected by this Court, and no change has occurred in the facts or law pertinent to the analysis, the Court relies on the law of the case doctrine. Thus, the Court declines to reconsider this issue.

---

[122] A.R. 56.

[123] A.R. 746.

[124] A.R. 749.

[125] A.R. 648, 654.

[126] *Compare* A.R. 20 ("[T]he claimant's work is limited to that involving only routine tasks that are taught by demonstration or visual format."), 648 ("He is limited to routine tasks that can be taught by demonstration.").

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 26 of 28

This Court also found previously that without Plaintiff's identification of the additional mental or physical limitations he believes should have been included in the RFC because of his somatic symptom disorder, "there is no basis for finding that the ALJ failed to adequately consider [P]laintiff's somatic symptom disorder."[127] Although Plaintiff asserts again that the ALJ did not adequately consider whether somatic symptom disorder was causing additional mental or physical limitations, he has not identified the additional limitations he believes should be included in the RFC.[128] Because Plaintiff posits the same argument previously decided by this Court, the law of the case doctrine also applies to Plaintiff's somatic symptom disorder claim. Therefore, the Court will not disturb its previous finding.

## C. Scope of Remand

Plaintiff requests that the Court reverse the SSA's final decision and remand for the immediate payment of benefits, or in the alternative, remand for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).[129] The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court.[130] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation[.]"[131]

---

[127] A.R. 755–56.

[128] Docket 9 at 9–10.

[129] Docket 9 at 16.

[130] *Garrison,* 759 F.3d at 1019.

[131] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

Case No. 3:23-cv-00123-HRH, *Hayden L. v. O'Malley*
Decision and Order
Page 27 of 28

As shown above, the ALJ's reasons for discounting Dr. Kidder's testimony and the standing/walking and lifting opinions of ACNP Schuerman, Dr. Cornelius, and Dr. Gerboth were not supported by substantial evidence. However, there are outstanding issues that must be resolved before a determination of disability can be made. Therefore, the proper remedy in this case is to remand for further administrative proceedings. The ALJ must accept Dr. Kidder's medical opinion and the standing/walking and lifting opinions of Plaintiff's treating providers or provide legally sufficient reasons for rejecting them and conduct any further necessary proceedings consistent with this Decision and Order.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's alternative request for relief at Docket 9 is GRANTED. The Commissioner's final decision is REVERSED and REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Decision and Order. The Court DIRECTS the Clerk of this Court to enter judgment in favor of Plaintiff and close this case accordingly.

DATED this 23rd day of April 2024, at Anchorage, Alaska.

*/s/ H. Russel Holland*
UNITED STATES DISTRICT JUDGE